**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LaConstance T. Lott,<br><br>    Plaintiff,<br><br>v.<br><br>Upgrade Incorporated,<br><br>    Defendant. | No. CV-25-02299-PHX-DMF<br><br>**ORDER** |

**I. INTRODUCTION**

    This matter is before the Court on Defendant's Motion to Compel Arbitration ("Motion to Compel") (Doc. 21). Plaintiff LaConstance T. Lott ("Plaintiff" and/or "Lott") is a self-represented, non-incarcerated litigant (*see* Doc. 1-1). Plaintiff and Defendant Upgrade Incorporated ("Defendant" and/or "Upgrade") are the only parties to this matter, which was removed by Defendant from the Maricopa County Superior Court (Doc. 1). In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have a United States Magistrate Judge conduct all further proceedings in this case with direct review by the Ninth Circuit Court of Appeals if an appeal is filed (Docs. 11, 12, 13).

    Defendant's Motion to Compel is brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq. (Doc. 21). In the Motion to Compel, Defendant argues that Plaintiff signed a valid and enforceable arbitration agreement on January 30, 2023, and thereby agreed to resolve any disputes concerning Plaintiff's employment through neutral and binding arbitration (*Id.* at 1). Defendant asks the Court to compel Plaintiff to

arbitration and stay this matter until the conclusion of arbitration proceedings (*Id.* at 8).

Despite requesting and being granted an extension of time to respond to Defendant's Motion to Compel (Docs. 32, 24), Plaintiff did not respond in opposition to the Motion to Compel and her time to do so has expired (Doc. 34).  However, Plaintiff previously filed a Motion to Vacate / Reconsider Order Compelling Arbitration, which asserted duress regarding the arbitration agreement, was procedurally deficient, and was denied (*see* Doc. 26; Doc. 27; *see also* Doc. 29 at 9).

After Plaintiff failed to timely respond in opposition to Defendant's Motion to Compel, Defendant replied in support of its Motion to Compel (Doc. 35).  Defendant's Motion to Compel (Doc. 21) is ripe for decision.

Upon careful review of the parties' arguments, the record in this matter, and applicable law, the Court will grant Defendant's Motion to Compel and stay these proceedings.

**II.    PROCEDURAL HISTORY AND POSTURE**

In May 2025, Plaintiff filed a Complaint against Defendant in the Maricopa County Superior Court (Doc. 1-1 at 2).  Defendant timely removed the action to this Court asserting federal question jurisdiction regarding Plaintiff's Title VII claims and supplemental jurisdiction regarding Plaintiff's state law claims (Doc. 1 at 2 ¶ 4, 3 ¶ 6).  Defendant thereafter moved to dismiss the Complaint (Doc. 5).  After response and reply (Docs. 16, 17), the Court granted in part Defendant's motion to dismiss (Doc. 19).  The Court dismissed Plaintiff's Title VII claims with prejudice and dismissed several state law claims without prejudice; Plaintiffs remaining claims are for defamation and several claims under the Arizona Civil Rights Act ("ACRA") (*Id.*).  The Court noted that "Plaintiff's Title VII claims, which provide the basis for this Court's jurisdiction on removal, will be dismissed with prejudice" but allowed any party to file a motion opposing remand "seeking that this Court exercise diversity jurisdiction or other jurisdiction over the remaining state law claims" (*Id.* at 6, 11).  Defendant timely filed a Motion in Opposition to Remand (Doc. 23) which the Court granted after response and reply, finding the Court sits in diversity

jurisdiction (Doc. 29; *see also* Docs. 24, 25, 28).

On September 23, 2025, Defendant filed the pending Motion to Compel requesting that the Court compel arbitration and stay these proceedings (Doc. 21). With the Motion to Compel, Defendant attached a declaration by Upgrade's Vice President of People Operations, Erik Navarro ("Navarro Declaration") (Doc. 21-1); the Mutual Arbitration Agreement electronically signed by Plaintiff and Upgrade's Chief Financial Officer, Jeff Bogan ("Arbitration Agreement") (Doc. 21-2); and a proposed form of order (Doc. 21-3).

Despite two extensions of time (Docs. 27, 32, 34), Plaintiff did not file a response. However, Plaintiff previously filed a Motion to Vacate / Reconsider Order Compelling Arbitration, which asserted duress regarding the arbitration agreement, was procedurally deficient, and was denied (*see* Doc. 26; Doc. 27; *see also* Doc. 29 at 9). Attached exhibits to the procedurally deficient and denied Motion to Vacate consisted of an undated instant messaging conversation between Plaintiff and a supervisor (Doc. 26 at 4); an instant messaging conversation between Plaintiff and a supervisor dated January 30th (*Id.* at 6); an email Plaintiff sent to an Upgrade HR representative regarding alleged retaliation (*Id.* at 8); and an email Plaintiff sent to an Upgrade HR representative asserting, among other things, that Plaintiff was forced to sign the company handbook without sufficient time to read and review it (*Id.* at 10).

After Plaintiff failed to timely respond to Defendant's Motion to Compel, Defendant filed a reply in support of the Motion to Compel (Doc. 35). Defendant's Motion to Compel (Doc. 21) is ripe for decision.

### III.   LEGAL FRAMEWORK

#### A.   Compelling Arbitration

Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3, 4. The FAA applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract or transaction[.]" 9 U.S.C. § 2; *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (concluding that the FAA applies if the transaction "'involve[s]' interstate commerce, even if the parties did not contemplate an interstate commerce connection"). The party seeking to compel arbitration "must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (citing *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017)). A court reviewing a motion to compel arbitration must consider two issues: (1) whether the parties agreed to arbitrate, and (2) whether the agreement to arbitrate encompasses their present dispute(s). *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp.*, 207 F.3d at 1130). In reviewing a motion to compel arbitration, the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024) (quoting *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022)).

As explained by the United States Supreme Court, the FAA establishes "a liberal federal policy favoring arbitration agreements" and directs courts to "treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (first quoting 9 U.S.C. § 2; then quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922-23 (9th Cir. 2011) (citing *Moses H. Cone*, 460 U.S. at 24-25). "Courts should thus 'construe ambiguities concerning the scope of arbitrability in favor of arbitration.'" *Id.* at 923 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995)).

1 "Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit.'" *Tracer Rsch. Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130.

In determining whether a valid arbitration agreement exists and the scope of arbitration, federal district courts apply state contract law principles. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Arizona law, "there must be an offer, an acceptance, consideration, and sufficient specification of terms" for an enforceable contract to exist. *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975). "[W]hen parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *VEREIT Real Est., LP v. Fitness Int'l, LLC*, 255 Ariz. 147, 152, 529 P.3d 83, 88 (Ct. App. 2023) (quoting *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, 138 P.3d 1210, 1213 (Ct. App. 2006)). The purpose of contract interpretation is to give effect to the parties' intent and when such intent is expressed in clear and unambiguous language the court need not resort to other tools of construction or interpretation. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 594, 218 P.3d 1045, 1050 (Ct. App. 2009).

"Arizona courts have long held that contracts procured under duress are unenforceable." *USLife Title Co. v. Gutkin*, 152 Ariz. 349, 357, 732 P.2d 579, 586 (Ct. App. 1986) (citations omitted). Cognizable duress occurs when a party is induced to sign a contract by way of a wrongful act or threat of the other party. *Inter-Tel, Inc. v. Bank of Am.*, 195 Ariz. 111, 117, 985 P.2d 596, 602 (Ct. App. 1999) (following the Restatement (First) of Contracts § 492); *see Dunbar v. Dunbar*, 102 Ariz. 352, 356, 429 P.2d 949, 953 (1967) (husband's duress claim failed because wife had a right to leave the marriage and

1 her threat to do so was not wrongful). "The test of what act or threat constitutes duress is determined by considering whether the threat placed the party entering into the transaction in such fear as to preclude the exercise by him of free will and judgment." *Dunbar*, 102 Ariz. at 355-56, 429 P.2d at 952-53 (citing Restatement (First) of Contracts § 492 cmt. a (1932)). Accordingly, a party's voluntary and informed agreement does not constitute duress. *Rubenstein v. Sela*, 137 Ariz. 563, 565, 672 P.2d 492, 494 (Ct. App. 1983).

### B. Stay of Proceedings

The FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Supreme Court has interpreted the language of Section 3 as the district court's mandatory obligation to stay the proceedings if the lawsuit involves an arbitrable dispute and a party requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). The Supreme Court reasoned that Section 3 "ensures that the parties can return to federal court if arbitration breaks down or fails to resolve the dispute. That return ticket is not available if the court dismisses the suit rather than staying it." *Id.* at 477 (footnote omitted). Accordingly, to protect the party's procedural protections under the FAA, the district court is compelled stay proceedings of an arbitrable dispute pending arbitration upon request of a party. *Id.* at 478-89.

### IV. THE ARBITRATION AGREEMENT (Doc. 21-2 at 2-5)

On January 30, 2023, Plaintiff and Upgrade's Chief Financial Officer, Jeff Bogan, executed the Arbitration Agreement (Doc. 21-2 at 5). Among other things, the Arbitration Agreement provides that "[a]ll disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court or jury**

**trial.**" (*Id.* at 2 (emphasis in original)).  As to claims covered by the Arbitration Agreement, it states the following:

> [T]his Agreement applies, without limitation, to claims based upon or related to discrimination, harassment, retaliation, defamation (including post-employment defamation or retaliation), whistleblowing, breach of a contract or covenant, fraud, negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or any monies claimed to be owed, meal breaks and rest periods, termination, tort claims, common law claims, equitable claims, and claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters, and any claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

(*Id.*).  Additionally, the Arbitration Agreement advises:

> This Mutual Arbitration Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.

(*Id.*).

In her procedurally deficient and denied Motion to Vacate / Reconsider Order Compelling Arbitration, it appears Plaintiff conceded that she signed the Arbitration Agreement, but Plaintiff asserts she was coerced into signing the Arbitration Agreement (Doc. 26 at 1-2).  Plaintiff argued that the Arbitration Agreement is unenforceable because Plaintiff signed the Arbitration Agreement under duress (*Id.* at 1-2).  In support of her duress argument, Plaintiff relied primarily on two purported instant messaging conversations between Plaintiff and her supervisors. Plaintiff characterized the conversations as demands to sign the Arbitration Agreement even though Plaintiff lacked "ample time to review and consult counsel" (*Id.*).  In the first undated conversation,

Plaintiff and her supervisor, Milagros Jorge, had the following exchange:

>Jorge: [Plaintiff] can you please go into workday and sign off on the handbook
>Thank you
>
>Plaintiff: yes of course. I was on a call sorry for the late reply..
>
>Plaintiff: I have reviewed and signed esigned . . . .
>
>Jorge: sure
>you reviewed the document for 45 minutes
>?
>
>Plaintiff: I did.

(*Id.* at 4). In the second conversation, dated January 30, Plaintiff and her supervisor, Chris Heck, further discuss signing the handbook:

>Heck: Hello, can you please go into workday and complete signing the company handbook.
>ASAP
>
>. . .
>
>Plaintiff: I have reviewed and signed esigned . . . .
>
>Heck: nice thank you

(*Id.* at 6). Indeed, the Arbitration Agreement reflects that Plaintiff signed it on January 30, 2023 (Doc. 21-2 at 5). Approximately one week later, Plaintiff emailed an Upgrade HR representative regarding alleged retaliation (Doc. 26 at 8) and two days after that sent another email asserting, among other things, that Plaintiff's supervisors "forced [her] to sign [the] 2023 Handbook without time to read the 70+ pages" (*Id.* at 10).

**V.      DISCUSSION**

Defendant is correct in its reply that "[d]espite the Court's generosity in granting Plaintiff two extensions to file her Response, she has failed to act." (Doc. 35 at 2). Ordinarily, when a motion is filed and the other party fails to file the required answering memoranda, the Court may consider such failure as consent to the granting of the motion.

*See* LRCiv. 7.2(i) ("[I]f the unrepresented party or counsel does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily); *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (affirming district court's dismissal of an action where party failed to respond in accordance with local rules thereby consenting to dismissal).  Nevertheless, because the Court previously stated that it was inclined to construe Plaintiff's Motion to Vacate as Plaintiff's response (Doc. 29 at 9), the Court will consider Plaintiff's arguments in her Motion to Vacate as set forth herein.

### A. Compelling Arbitration

Defendant argues that the Court should compel the parties to arbitration because the Arbitration Agreement falls within the scope of the FAA, the Arbitration Agreement is valid and enforceable, and the Arbitration Agreement covers the claims in these proceedings (Doc. 21).  Defendant reasons that the FAA applies because Defendant sells its products and services in all fifty states and Washington, D.C., satisfying the commerce requirement (*Id.* at 4-5).  Defendant argues that the Arbitration Agreement is enforceable under Arizona law and Plaintiff's remaining claims, which arise out of her employment with and separation from Defendant, are claims covered by the Arbitration Agreement (*Id.* at 6-9).  Thus, Defendant concludes that the FAA requires the claims in this matter to be referred to arbitration (*Id.* at 5-6, 8).  Plaintiff does not contest that she signed the Arbitration Agreement but argued in her previous filing that the Arbitration Agreement is unenforceable because she claims she signed such under duress (Doc. 26).

First, the Court agrees with Defendant's contention that the FAA applies to the Arbitration Agreement.  In the Navarro Declaration, an Upgrade Vice President describes Defendant as a "privately held financial technology company that operates an online marketplace, through which consumers can apply for and obtain various financial products" (Doc. 21-1 at 2 ¶ 3).  He further states that Defendant "does business in all fifty states and Washington, DC" (*Id.* at 2 ¶ 4).  Thus, because Defendant conducts interstate business and Plaintiff's employment relationship with Defendant—including the

Arbitration Agreement—involves interstate commerce, the FAA applies.

As to the question of whether there was an agreement to arbitrate, the Court finds by a preponderance of the evidence that Plaintiff and Defendant entered into a valid and enforceable arbitration agreement under Arizona law.[1]  Here, offer and acceptance of the Arbitration Agreement[2] are shown by the electronic signatures of Plaintiff and Defendant's CFO (*see* Doc. 21-2 at 5).  Moreover, the Arbitration Agreement states that "[t]he mutual obligations by [Defendant] and [Plaintiff] to arbitrate provide consideration for this Agreement" and the terms of such obligations are clearly specified (*Id.* at 4; *see generally id.*).  Therefore, the Arbitration Agreement is an enforceable contract and the Court must give effect to its provisions.  *See Savoca Masonry*, 112 Ariz. at 394, 542 P.2d at 819.

Moreover, the materials Plaintiff proffers to show duress do not support her argument.  Rather than showing a wrongful act or threat by Defendant, the asserted instant messaging conversations reflected that Plaintiff's supervisors merely asked her to sign the company handbook (Doc. 26 at 4, 6).  Both supervisors asked Plaintiff to "please go into workday and sign off on the handbook" and, although one requested Plaintiff to sign "ASAP," Plaintiff spent at least 45 minutes reviewing the documents before signing (*Id.*).  Moreover, the Navarro Declaration relates that "Plaintiff was also advised and encouraged to review the Arbitration Agreement with legal counsel of her choice" (Doc. 21-1 at 2 ¶ 8) and the Arbitration Agreement further advised Plaintiff that "[i]t is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice." (Doc. 21-2 at 2).  Upon review of the parties' submissions and the record in this matter, the Court discerns no wrongful threat or act by Defendant to induce Plaintiff into signing the Arbitration Agreement.  Accordingly, the Court finds that Plaintiff was free to accept or reject the Arbitration Agreement and did not sign under duress.

---

[1] Plaintiff did not contest that Arizona law governs (*see* Doc. 26).

[2] The Navarro Declaration relates that the agreement attached to Defendant's motion (Doc. 21-2) is a true and correct copy of the Arbitration Agreement electronically signed by Plaintiff on January 30, 2023 (Doc. 21-1 at 2 ¶ 6).

As to the question of whether the claims in these proceedings are covered by the Arbitration Agreement, the Court concludes that the parties' agreement encompasses all of the parties' present disputes in these proceedings. After the Court dismissed Plaintiff's claims brought under Title VII of the Civil Rights Act of 1964, the Arizona Employment Protection Act, and respondeat superior, Plaintiff's remaining claims against Defendant are defamation and several claims under ACRA, namely harassment, sexual harassment, and retaliation (Doc. 19 at 10-11; *see* Doc. 1-1 at 11). Each claim relates to conduct by Defendant's employees and to events that occurred while Plaintiff was employed by Defendant (Doc. 1-1 at 6-9, 11). Thus, Plaintiffs remaining claims in these proceedings fall squarely within the Arbitration Agreement's provision requiring the parties to arbitrate claims relating to "harassment, retaliation, [and] defamation (including post-employment defamation or retaliation)" (Doc. 21-2 at 2). Moreover, the Arbitration Agreement applies to "claims based upon or related to . . . [the] Civil Rights Act of 1964 . . . [and] state statutes or regulations addressing the same or similar subject matters" (*Id.*). Accordingly, the Arbitration Agreement applies to ACRA claims because, as stated by the Arizona Supreme Court, "[t]he Arizona Civil Rights Act is modeled after and generally identical to the federal statute in the area (Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq.)." *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 165, 673 P. 2d 907, 909 n.3 (1983). The Court will thus give effect to the parties' clear agreement that the remaining claims in this matter be arbitrated.

In short, the parties agreed to arbitrate, the Arbitration Agreement encompasses the remaining claims in this matter, and the Court will compel arbitration.

**B. Stay of Proceedings**

Defendant argues that a court must stay proceedings when arbitration is compelled and a party requests a stay (Doc. 21 at 8). Plaintiff has not addressed the issue of a stay (*see* Doc. 26). In any event, Defendant is correct that if a lawsuit involves an arbitrable dispute and a party requests a stay, the court must grant the stay. *Smith*, 601 U.S. at 475-76. Accordingly, the Court will stay the litigation in this Court pending arbitration of

Plaintiff's remaining claims in these proceedings.

## VI. CONCLUSION

Plaintiff and Defendant entered into a valid and enforceable arbitration agreement that encompasses all the remaining claims in this matter, which are Plaintiff's defamation claims and ACRA claims (*see* Doc. 19).  Therefore, the Court will grant Defendant's Motion to Compel (Doc. 21), will order the parties to arbitration pursuant to the Arbitration Agreement (Doc. 21-2 at 2-5), and will stay these proceedings pending arbitration.

Accordingly,

**IT IS HEREBY ORDERED** granting Defendant's Motion to Compel Arbitration (Doc. 21).

**IT IS FURTHER ORDERED** compelling Plaintiff and Defendant to arbitration pursuant to the Arbitration Agreement (Doc. 21-2 at 2-5) on all Plaintiff's remaining claims in this matter, which are Plaintiff's defamation claims and ACRA claims.

**IT IS FURTHER ORDERED** staying these proceedings pending arbitration pursuant to the Arbitration Agreement (Doc. 21-2 at 2-5).

**IT IS FURTHER ORDERED** that Defendant, after seeking the input of Plaintiff, shall file with this Court a joint status report setting forth the progress of the arbitration within 90 days of the date this Order is filed and then every 90 days thereafter through conclusion of arbitration.

Dated this 18th day of December, 2025.

_____
Honorable Deborah M. Fine
United States Magistrate Judge